UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JAMES EATON PHILIPS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MUNCHERY INC.,<br><br>Defendant. | Case No. 19-cv-00469-JSC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 54, 58, 60 |

Plaintiffs Joshua James Eaton Phillips and Christina Brooks bring this putative class action under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101(a)(2), and its California state law counterpart, California Labor Code §§ 1400 *et seq.* ("CAL-WARN") (together, "WARN Acts"), against their former employer, Defendant Munchery, Inc. ("Munchery"). Plaintiffs allege that Munchery failed to provide its employees with written notice 60 days prior to their termination, as required under the WARN Acts. In February 2020, the parties reached a settlement of Plaintiffs' claims. Thereafter, the parties filed a joint motion for preliminary approval of the class action settlement.[1] (Dkt. No. 54.) At the hearing on motion for preliminary approval, the Court raised a number of concerns with the settlement and denied preliminary approval without prejudice to a renewed filing addressing the Court's concerns. (Dkt. No. 57.) Plaintiffs have since submitted two additional declarations and a revised form of notice to address the Court's concerns. (Dkt. Nos. 58, 60.) Having reviewed these additional submissions, the Court GRANTS Plaintiffs' renewed request for preliminary approval of the class action settlement.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 28.)

**BACKGROUND**

Munchery operated an online food delivery service in the San Francisco Bay Area until January 21, 2019 when it went out of business. On January 25, 2019, Plaintiffs filed this action alleging that Munchery failed to comply with the WARN Act and provide 60 days of written notice to its employees before ordering the mass layoff. (Dkt. No. 1.) Two weeks later, Plaintiffs filed a First Amended Complaint adding a claim under the California WARN Act. (Dkt. No. 6.) Shortly thereafter Munchery filed for Chapter 11 bankruptcy. *See In re: Munchery*, No. 19-30232 (N.D. Cal. Bankr. Feb. 28, 2019). The bankruptcy filing resulted in a stay in this action under 11 U.S.C. § 362(a)(1). (Dkt. No. 9.[2]) In May 2019, the bankruptcy court lifted the automatic stay under Section 362(a)(1) and proceedings in this action resumed. (Dkt. Nos. 10, 11.) In August 2019, Plaintiffs filed their motion for class certification. (Dkt. No. 36.) The parties jointly requested that the Court delay hearing the motion for class certification in light of the parties' upcoming mediation with Bankruptcy Judge Roger Efremsky and other constituencies in the Chapter 11 proceeding. (Dkt. No. 42.) Over the next several months, with the assistance of Judge Efremsky, the parties continued to negotiate a collective resolution to this matter culminating in a settlement agreement in February 2020. The now pending joint motion for preliminary approval of the class action settlement was filed on May 22, 2020. (Dkt. No. 54.) The court heard oral argument on July 23, 2020 and ordered Plaintiffs to file a supplemental submission to address numerous issues with the settlement, notice, and the parties' motion. (Dkt. No. 57.) On September 1, 2020, Plaintiffs submitted a declaration and revised notice to address the issues the Court raised. (Dkt. No. 58.) Because the Court still had concerns regarding the form of the notice and the pro rata share calculation, the Court ordered Plaintiffs to submit a further declaration and form of notice. (Dkt. No. 59.) Plaintiffs thereafter submitted a second supplement declaration and revised form of notice. (Dkt. No. 60.)

**I.   FAC Allegations**

Munchery operated a food delivery service based in San Francisco, California until it

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)

"abruptly ceased operations" on January 21, 2019. (Dkt. No. 6 at ¶ 1.) Plaintiffs and approximately 250 other individuals (together, "Employees") worked for Munchery until that date (or within 30 days of that date) and were terminated "without cause and without 60 days' written notice"[3] of their terminations.[4] (*Id.* at ¶¶ 2, 11.) In addition, Munchery failed to pay the Employees "their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations." (*Id.* at ¶ 46.) Munchery also "failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations."[5] (*Id.*)

## II. Settlement Agreement[6]

### A. Proposed Class

The proposed settlement class consists of

> Plaintiffs and all persons who worked at, were based out of, received assignments from, or reported to Defendant's facility at 200 Shaw Road, South San Francisco, California, (ii) who were terminated without cause, as part of, or as the result of, a mass layoff or plant closing ordered by Defendant and carried out on or about January 21, 2019 and within 30 days of that date or in reasonable anticipation of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant on or about January 21, 2019, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class.

(Dkt. No. 54-1 at 11.)

//

---

[3] The WARN Act provides that covered employers "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a).
[4] The amended complaint alleges that the proposed class consists of Employees "who were terminated without cause in the mass layoff or plant closing ordered by Defendant on or about January 21, 2019 and within thirty [ ] days of that date, and who were not provided 60 days' advance written notice of their terminations" or otherwise compensated, as required under the WARN Acts. (Dkt. No. 6 at ¶ 2.)
[5] Under the WARN Act, an employer who fails to provide timely notice of termination or plant closing is liable to affected employees for "back pay for each day of violation" and "benefits under an employee benefit plan." 29 U.S.C. § 2104(a)(1).
[6] The Settlement Agreement is a collective settlement agreement among many of creditors to the bankruptcy action as part of a global effort to develop a Chapter 11 liquidation plan. (Dkt. No. 54-2 at 2.) Many of the terms herein are not set forth in the Settlement Agreement.

3

### B. Payment Terms

The gross Settlement Amount is $400,000. The following amounts will be deducted from the gross settlement amount: Class Representative Payments of $5,000, Class Counsel's fees of up to $126,666.67, expenses of up to $15,000, and the employer's share of the payroll taxes in the amount of $30,622.61. The remaining $222,710 will be distributed to the Class Members in pro rata shares. (Dkt. No. 60 at ¶ 2.) Class Counsel has provided pro rata calculations for the distributions to Class Members, including the deduction of the employer taxes. (Dkt. No. 58-1 at 3.)

Any settlement checks which remain undeposited after 180 days will be electronically transferred by the settlement administrator to the State of California's Unclaimed Property Fund, https://www.sco.ca.gov/upd_rptg.html in the name of the Class Member. (*Id.* at ¶ 28.)

### C. Taxes

The settlement amount is inclusive of all payroll taxes; the Settlement Administrator retained by Class Counsel will be responsible for withholding, paying, and reporting all income tax withholdings and statutory taxes. (Dkt. No. 54-1 at 12; Dkt. No. 58 at 25.)

### D. Release

Upon final approval of the Settlement Agreement, the Class Members shall release "all claims of the members of the Class against the Debtor's estate arising from the facts alleged in the class action Complaint, including, but not limited to, any administrative, priority, and general unsecured claims." (Dkt. No. 54-2 at 7.)

### E. Notice

Defendants will provide Class Counsel with a list of the Settlement Class home addresses from its records, which Class Counsel will update and provide to the Settlement Administrator, American Legal Claim Services, LLC ("ALCS"). (Dkt. No. 58 at ¶¶ 20-21.) ALCS will then mail the class notice. (*Id.* at ¶ 21.) Any notices returned as undeliverable will be forwarded to any forwarding address obtained by Class Counsel, or if no forwarding address, ALCS will attempt to locate the correct address through skip-tracing. (*Id.*) ALCS will provide Class Counsel with a monthly report regarding the status of the notice. (*Id.* at ¶ 22.)

Class Counsel will also publish notice of the settlement on the website: https://www.warnlawyers.com/recent- cases/munchery-inc. (Dkt. No. 60 at ¶ 1.) Class Counsel will also conduct outreach of class members with the assistance of the class representatives and other class members for whom we have contact information. (*Id*.)

If Class Members do not submit an opt-out, ALCS will mail them their settlement checks. (*Id*. at ¶ 23.) ALCS shall provide class counsel with a monthly report regarding how many of the checks have been cashed for a period of 180 days. (*Id*.)

### F. Opt-Out and Objections to the Settlement

Class members may opt out by returning the "Opt-Out Form" enclosed with the notice to Class Counsel 10 days prior to the final approval hearing. (Dkt. No. 54-3 at 6, 8; Dkt. No. 58-2 at 6-9.) Class members who wish to object to the Settlement or the request for attorneys' fees must mail written objections to the Court, which must be received 10 days prior to the final approval hearing. (Dkt. No. 58 at 7-8.)

## DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Where, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

### I.   Conditional Certification of the Settlement Class

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

5

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiffs have satisfied their burden of demonstrating that the proposed class satisfies each element of Rule 23.

**A. Rule 23(a)**

The Rule 23(a) factors are satisfied. First, there are approximately 270 persons in the class. (Dkt. No. 54-1 at 16.) The putative class thus satisfies the numerosity requirement. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.").

Second, the commonality requirement is satisfied where, as here, Plaintiffs allege that each Employee was terminated without case, without notice, and without compensation as a result of Munchery's "mass layoff or plant closing" ordered on January 21, 2019, in violation of the WARN Acts. (Dkt. No. 6 at ¶ 2.) There are legal and factual questions common to the class because each Employee has allegedly suffered the same injury under the WARN Acts arising out of the January 2019 terminations. The common legal questions include whether Munchery is a "covered employer" under the WARN Acts and whether the January 2019 terminations were part of a "mass layoff or plant closing." Common factual issues also abound, including consideration of whether the terminations on or within 30 days of January 21, 2019 were without cause and without notice, and whether Munchery provided the requisite 60 days' worth of benefits and wages to each Employee. *See Etzelsberger v. Fisker Auto., Inc.*, 300 F.R.D. 378, 383 (C.D. Cal. 2013) (finding existence of the same legal and factual issues present here sufficient to satisfy commonality requirement in WARN Act class action). Because these issues present common

questions capable of resolution on a classwide basis, the commonality requirement is satisfied.[7] *See Mazza*, 666 F.3d at 588.

Third, the typicality requirement is similarly satisfied because Plaintiffs are members of the proposed class and their claims are based on the same underlying facts as the claims of absent class members. Plaintiffs allege that they were terminated like the other Employees—without cause and without notice as part of the same January 2019 mass layoff or plan closing. Plaintiffs further allege that they, like the other Employees, were not otherwise compensated as part of the terminations. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

Finally, Plaintiffs and class counsel appear to adequately represent the class. There is no indication of a conflict of interest between Plaintiffs or their counsel and the putative class members. Plaintiffs' claims are instead aligned with those of proposed class members because they are based on both alleged conduct common to all Employees and Plaintiffs' status as "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5). Thus, Plaintiffs are adequate class representatives because they have "the same incentives as the absent class members to obtain relief for [Munchery's] alleged violations of the WARN Acts." *See Etzelsberger*, 300 F.R.D. at 384. Plaintiffs' counsel consists of three attorneys, Jack Raisner and Rene Roupinian, founding partners of Raiser Roupinian LLP, a New York law firm and Gail Lin, who is Of Counsel in their California office. (Dkt. No. 58 at ¶¶ 37-51.) Counsel has represented employees in more than 100 WARN Act cases. (*Id.*) Thus, it appears that Plaintiffs' counsel is "qualified, experienced, and generally able to conduct the class action litigation." *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 617 (N.D. Cal. 2014).

---

[7] Munchery's affirmative defenses also present questions of law and fact common to all class members; specifically, that Munchery cannot be held liable under the WARN Act based on application of: (1) the "'faltering company' exception to WARN's requirements"; and (2) the "'unforeseen business circumstances' exception to WARN requirements." (*See* Dkt. No. 32 at 5-7 (citing 29 U.S.C. §§ 2102(b)(1), 2102(b)(2)(A)).)

**B. Rule 23(b)(3)**

Rule 23(b)(3) requires establishing the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Here, the Court concludes that there are not any predominance or superiority concerns because the challenged practice is common to all class members.

### 1. Predominance

Rule 23(b)(3) first requires "predominance of common questions over individual ones" such that "the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This "inquiry focuses on the relationship between the common and individual issues." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted). In particular, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). When common questions "present a significant aspect of the case [that] can be resolved for all members of the class with a single adjudication," there is justification for "handling the dispute on representative rather than on an individual basis." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. Sept. 8, 2011) (internal quotation marks and citation omitted).

Here, Plaintiffs bring claims for violation of the WARN Acts. The federal WARN Act applies to employers with 100 or more employees, and the CAL-WARN Act applies to employers with 75 or more employees. 29 U.S.C. § 2101(a)(1); Cal. Lab. Code § 1400(a). Under the WARN Acts, employers must provide written notice to affected employees 60 days prior to

ordering a mass layoff or relocation. 29 U.S.C. § 2102(a) (providing that "an employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to each affected employee); *see* Cal. Lab. Code § 1401 (requiring employers to give written notice to affected employees 60 days prior to "mass layoff, relocation, or termination"). Subject to certain limitations and defenses, employers that fail to provide the required notice are liable to each affected employee for back pay and benefits for each day of violation, up to a maximum of 60 days. 29 U.S.C. § 2104(a); Cal. Lab. Code § 1402(a),(b).

For the reasons previously stated with regard to the commonality requirement under Rule 23(a), the Court is satisfied that the core common question in this case—whether Munchery provided the requisite written notice to Employees prior to the January 2019 layoffs or otherwise compensated them pursuant to the WARN Acts—presents common questions of law and fact that predominate over issues with respect to individual Employees. Further, Munchery could potentially defeat the claims of the proposed class if it proves its affirmative defenses and demonstrates that the "'faltering company' exception" or the "'unforeseen business circumstances' exception" to the WARN Act apply. (*See* Dkt. No. 32 at 5-7 (citing 29 U.S.C. §§ 2102(b)(1), 2102(b)(2)(A)).) Accordingly, the Court concludes that common questions of law and fact predominate.

**2. Superiority**

A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), modified, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), aff'd sub nom., *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). A class action is superior to individual litigation in this matter.

First, there is no evidence suggesting that other class members have any interest in individually controlling the prosecution of separate actions. The amount of damages for each

individual employee—60 days' pay plus benefits—is relatively small and Munchery is in bankruptcy. As a result, there is little incentive for each class member to pursue his or her claims on an individual basis. *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages"). Second, class action treatment for this WARN Act litigation will also promote judicial economy and avoid duplicate efforts in multiple suits, given that all of the major issues in dispute are subject to common proof. *See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 527 F.Supp.2d 1053, 1069 (N.D. Cal. 2007).

\*\*\*

Accordingly, the Court concludes that conditional certification of the class under Rule 23(b)(3) for settlement purposes is proper.

## II. Preliminary Approval of the Settlement Agreement

In determining whether a class action settlement agreement is fair, adequate, and reasonable to all concerned, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight ... factors alone is" insufficient. *Id*. In such cases, courts must not only consider the above factors, but also ensure that the settlement did not result from collusion among the parties. *Id*. at 947. Because collusion "may not always be evident on the face of a settlement, ... [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. The *Bluetooth* court identified three such signs:

10

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. (internal quotation marks and citations omitted).

The court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

**A. Fairness Factors**

**1. Settlement Process**

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.* Here, the parties participated in a medication with U.S. Bankruptcy Judge Roger Efremsky which included other constituents from Munchery's Chapter 11 case. (Dkt. No. 58 at ¶ 16.) Following the mediation, that parties continued to work with Judge Efremsky and reached a settlement in

11

February 2020. (*Id*. at ¶ 16.) "As part of the negotiations, the parties discussed the state of Defendant's bankruptcy case, including the prospect of recovery for unsecured creditors such as the Plaintiffs and other former employees. Given the limited assets in the estate, Plaintiffs agreed to resolve the WARN class claim for $400,000, subject to court approval." (*Id*. at ¶ 17.)

### 2. Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *See Harris*, 2011 WL 1627973, at *8. The settlement amount represents a 26% recovery of the Class' $1.49 million WARN claim (which is their total WARN damages capped by the Bankruptcy Code's priority ceiling of $12,850 per person, pursuant to 11 U.S.C. § 507(a)(4)). (Dkt. No. 58 at ¶ 18; Dkt. No. 60 at ¶ 4.) While the fact that the employer's side of the taxes comes out of the Class Members' recovery would ordinarily be a red flag, where as here, the employer is in bankruptcy and lacks assets to pay the employer's side of the taxes, it is reasonable to deduct these as well as the employee-side taxes from the total settlement amount.

### 3. Lack of Preferential Treatment

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member." *See Villegas*, 2012 WL 5878390, at *7. The Settlement Agreement provides for a pro rata distribution of the settlement amount under which each individual Class Member's 60 days' of WARN damages, capped at the Bankruptcy Code's priority cap of $12,850 pursuant to 11 U.S.C. § 507(a)(4), will be divided by the aggregate priority WARN damages of all Class Member, and damages will be based on the Class Member's hourly and salary rates provided. (Dkt. No. 58 at ¶ 27.)  The motion also requests a $2,500 incentive payment for each plaintiff. (Dkt. No. 54-1 at 12; Dkt. No. 58 at ¶ 32.)

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Incentive awards of $5,000 have been deemed "presumptively reasonable" in this District. *See, e.g., Burden v. SelectQuote Insurance Services*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2,

2013; *Hopson v. Hanesbrands Inc.*, No. CV–08–0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009). Plaintiffs contend that an incentive award of $2,500 is warranted here because they assisted with preparing the complaint, submitted a declaration in support of class certification, "spent significant time speaking to Class Counsel in preparation for mediation and subsequent settlement negotiations," and Plaintiff Phillips acted as a representative of the unsecured creditors in the bankruptcy case. (Dkt. No. 54-1 at 36; Dkt. No. 58 at ¶¶ 32-35.)

### 4. Range of Possible Approval

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiffs' "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

The settlement amount represents 26 percent of the Class' $1.49 million WARN Claim. . (Dkt. No. 58 at ¶ 18; Dkt. No. 60 at ¶ 4.) Class Counsel attests that this amount is fair and reasonable based on their experience litigating WARN cases against bankruptcy estates, and their discussions with the parties and the mediator, United States Bankruptcy Judge Efremsky. (*Id.*) Given Defendants bankruptcy and limited assets, the $400,000 settlement appears to be fair, reasonable, and adequate.

***

Accordingly, consideration of the fairness factors warrants preliminary approval of the Settlement Agreement.

### B. Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best

13

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks and citation omitted). Plaintiffs have substantially revised the form of notice. (Dkt. No. 60-1.) The Court is satisfied that in its current form the notice clearly and completely explains the settlement to class members.

### C. Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Under the federal WARN Act the Court may in its discretion award attorneys' fees see 29 U.S.C. 2104 (a)(6); *see also* Cal. Labor Code § 1404.

Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the

14

district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id*. at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See id*. at 944-45.

The Settlement Agreement is silent as to the attorneys' fees allocation except to state that "the class proof of claim shall assert a priority claim for the $400,000 amount, regardless of its apportionment and distribution as between WARN Act back pay, taxes, costs, counsel fees, service payments, or WARN Act damages." (Dkt. No. 54-2 at 7.)  In the motion for preliminary approval, Class Counsel indicates that they plan to seek one-third of the settlement amount for attorneys' fees.  It appears that counsel came up with this amount after the settlement was reached and is based on the fact that have consistently been awarded this amount in other WARN Act cases. (Dkt. No. 58 at ¶ 44.)  Counsel attests that their lodestar is $275,224.  (*Id*. at ¶ 38.)  In support of an increase above the 25 percent benchmark, Counsel must submit evidence— declarations, billing summaries, etc.— from which the Court could determine an appropriate

15

lodestar figure to cross-check the amount requested. *See Powers*, 229 F.3d at 1256-57 (noting that "[a] district court may depart from the benchmark," but "it must be made clear by the district court how it arrives at the figure ultimately awarded").

Accordingly, Plaintiffs shall submit a motion for attorneys' fees including declarations and detailed billing records so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees. *See In re Mercury Interactive Corp.*, 618 F.3d at 995 (holding that class members must "have an adequate opportunity to oppose class counsel's fee motion").

### D. Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted).

Plaintiffs' counsel is instructed to submit an itemized sheet summarizing costs with its motion for attorneys' fees so that the Court can determine whether these costs are reasonable litigation expenses incurred for the benefit of the class.

### CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. The Court provisionally certifies the following Settlement Class, for settlement purposes only:

> all persons who worked at, were based out of, received assignments from, or reported to Defendant's facility at 200 Shaw Road, South San Francisco, California, (ii) who were terminated without cause, as part of, or as the result of, a mass layoff or plant closing ordered by Defendant and carried out on or about January 21, 2019 and within 30 days of that date or in reasonable anticipation of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant on or about January 21, 2019, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class.

2. Jack Raisner, Rene Roupinian, and Gail Lin of Raiser Roupinian LLP are appointed as Class Counsel.

3. Within 30-days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the Notice Plan.

4. The deadline for class members to submit a request for exclusion is January 11, 2021.

5. The deadline for class members to object to the Settlement Agreement is January 11, 2021.

6. Class Counsel shall file a motion for attorneys' fees and costs by December 3, 2020.

7. Plaintiffs shall file their Motion for Final Approval by January 7, 2021. The motion shall include a copy of the Notice ultimately sent to the class along with the other information, as available, suggested by the Northern District of California Procedural Guidance for Class Action Settlements.

8. The deadline for class members to object to Class Counsel's motion for attorneys' fees and costs shall be January 11, 2021.

9. The parties shall appear before this Court for a final approval hearing on January 21, 2021 at 9:00 a.m. in Courtroom E, 450 Golden Gate Ave., San Francisco, California.

**IT IS SO ORDERED.**

Dated: October 19, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge