UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA JAMES EATON PHILIPS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MUNCHERY INC.,<br><br>Defendant. | Case No.  19-cv-00469-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARD**<br><br>Re: Dkt. Nos. 63, 65 |

Plaintiffs Joshua James Eaton Phillips and Christina Brooks bring this putative class action under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101(a)(2), and its California state law counterpart, California Labor Code §§ 1400 *et seq.* ("CAL-WARN") (together, "WARN Acts"), against their former employer, Defendant Munchery, Inc. ("Munchery").  Plaintiffs allege that Munchery failed to provide its employees with written notice 60 days prior to their termination, as required under the WARN Acts.  In February 2020, the parties reached a settlement of Plaintiffs' claims.  Now before the Court is Plaintiffs' unopposed motion for final approval of the parties' class action settlement agreement and motion for attorneys' fees, costs, and a class representative incentive award.[1]  (Dkt. Nos. 63, 65.)  After reviewing the moving papers, and supporting evidence, and as no objections to the settlement have been made, the Court VACATES the February 4, 2021 hearing, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS the motion for final approval and motion for attorneys' fees and costs and an

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 28.)

incentive award.

**BACKGROUND**

Munchery operated an online food delivery service in the San Francisco Bay Area until January 21, 2019 when it went out of business. On January 25, 2019, Plaintiffs filed this action alleging that Munchery failed to comply with the WARN Act and provide 60 days of written notice to its employees before ordering the mass layoff. (Dkt. No. 1.) Two weeks later, Plaintiffs filed a First Amended Complaint ("FAC") adding a claim under the California WARN Act. (Dkt. No. 6.) Shortly thereafter Munchery filed for Chapter 11 bankruptcy. *See In re: Munchery*, No. 19-30232 (N.D. Cal. Bankr. Feb. 28, 2019). The bankruptcy filing resulted in a stay in this action under 11 U.S.C. § 362(a)(1). (Dkt. No. 9.[2]) In May 2019, the bankruptcy court lifted the automatic stay under Section 362(a)(1) and proceedings in this action resumed. (Dkt. Nos. 10, 11.) In August 2019, Plaintiffs filed their motion for class certification. (Dkt. No. 36.) The parties jointly requested that the Court delay hearing the motion for class certification in light of the parties' upcoming mediation with Bankruptcy Judge Roger Efremsky and other constituencies in the Chapter 11 proceeding. (Dkt. No. 42.) Over the next several months, with the assistance of Judge Efremsky, the parties continued to negotiate a collective resolution to this matter culminating in a settlement agreement in February 2020.

The parties filed a joint motion for preliminary approval of the class action settlement on May 22, 2020. (Dkt. No. 54.) At oral argument, the Court raised concerns with the settlement, notice, and the parties' motion, and ordered Plaintiffs to submit an additional declaration in support. (Dkt. No. 57.) Plaintiffs did so and the Court requested further briefing. (Dkt. Nos. 58, 59.) After reviewing all the supplemental submissions, the Court granted preliminary approval of the settlement on November 19, 2020. (Dkt. No. 61.) Plaintiffs thereafter filed the now pending motion for attorneys' fees, costs and a class representative incentive award, and motion for final approval of the class action settlement. (Dkt. Nos. 63, 65.)

//

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## I. FAC Allegations

Munchery operated a food delivery service based in San Francisco, California until it "abruptly ceased operations" on January 21, 2019. (Dkt. No. 6 at ¶ 1.) Plaintiffs and approximately 250 other individuals (together, "Employees") worked for Munchery until that date (or within 30 days of that date) and were terminated "without cause and without 60 days' written notice"[3] of their terminations.[4] (*Id.* at ¶¶ 2, 11.) In addition, Munchery failed to pay the employees "their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations." (*Id.* at ¶ 46.) Munchery also "failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, other than health insurance, for 60 days from and after the dates of their respective terminations."[5] (*Id.*)

## I. Settlement Agreement[6]

### A. Settlement Class

The settlement class consists of

> Plaintiffs and all persons who worked at, were based out of, received assignments from, or reported to Defendant's facility at 200 Shaw Road, South San Francisco, California, (ii) who were terminated without cause, as part of, or as the result of, a mass layoff or plant closing ordered by Defendant and carried out on or about January 21, 2019 and within 30 days of that date or in reasonable anticipation of or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendant on or about January 21, 2019, (iii) who are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of

---

[3] The WARN Act provides that covered employers "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a).

[4] The amended complaint alleges that the proposed class consists of employees "who were terminated without cause in the mass layoff or plant closing ordered by Defendant on or about January 21, 2019 and within thirty [ ] days of that date, and who were not provided 60 days' advance written notice of their terminations" or otherwise compensated, as required under the WARN Acts. (Dkt. No. 6 at ¶ 2.)

[5] Under the WARN Act, an employer who fails to provide timely notice of termination or plant closing is liable to affected employees for "back pay for each day of violation" and "benefits under an employee benefit plan." 29 U.S.C. § 2104(a)(1).

[6] The Settlement Agreement is a collective settlement agreement among many of the creditors in the bankruptcy action as part of a global effort to develop a Chapter 11 liquidation plan. (Dkt. No. 54-2 at 2.) Many of the terms recited in this Order are not set forth in the Settlement Agreement, but are set forth in the pleadings and supporting declarations.

the class.

(Dkt. No. 54-1 at 11.) The class is comprised of 268 individuals.

### B. Payment Terms

The gross Settlement Amount is $400,000. The following amounts will be deducted from the gross settlement amount: Class Representative Payments of $5,000, Class Counsel's fees of up to $126,666.67, expenses of up to $15,000, and the employer's share of the payroll taxes in the amount of $30,622.61. The remaining $222,710 will be distributed to the Class Members in pro rata shares. (Dkt. No. 60 at ¶ 2.) Class Counsel has provided pro rata calculations for the distributions to Class Members, including the deduction of the employer taxes. (Dkt. No. 58-1 at 3.) Any settlement checks which remain undeposited after 180 days will be electronically transferred by the settlement administrator to the State of California's Unclaimed Property Fund, https://www.sco.ca.gov/upd_rptg.html in the name of the Class Member. (*Id*. at ¶ 28.)

### C. Taxes

The Settlement Amount is inclusive of all payroll taxes; the Settlement Administrator retained by Class Counsel is responsible for withholding, paying, and reporting all income tax withholdings and statutory taxes. (Dkt. No. 54-1 at 12; Dkt. No. 58 at 25.)

### D. Release

Upon final approval of the Settlement Agreement, the Class Members shall release "all claims of the members of the Class against the Debtor's estate arising from the facts alleged in the class action Complaint, including, but not limited to, any administrative, priority, and general unsecured claims." (Dkt. No. 54-2 at 7.)

### E. Notice

On November 20, 2020, the Settlement Administrator, American Legal Claim Services, LLC ("ALCS"), mailed notice to all 268 Class Members. (Dkt. No. 65-2 at ¶ 3.) Twelve class notices were returned as undeliverable. (*Id*. at ¶ 4.) ALCS performed "skip traces" and obtained updated addresses for seven of the twelve individuals. (*Id*. at ¶ 5.) ALCS remailed notice to all seven of these individuals and none of the notices were returned. (*Id*. at ¶ 6.)

Class Counsel also published notice of the settlement on the website:

https://www.warnlawyers.com/recent- cases/munchery-inc.  (Dkt. No. 65-1 at ¶ 19.)  The website also contains a brief summary of the case, links to the binding term sheet describing the settlement, the parties' joint preliminary approval motion, the order granting preliminary approval, the notice of settlement, the motion for approval of attorneys' fees, costs and class representatives' service awards, and the motion for final approval, as well as information about how to contact Class Counsel directly.  (*Id.*)

### F. Opt-Out and Objections to the Settlement

The deadline to opt-out of or object to the settlement was January 11, 2021 and to date, no opt-outs or objections have been received. (*Id.* at ¶ ¶ 22-24.)

## DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Where, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The approval of a class action settlement takes place in two stages. In the first stage of the approval process, the Court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012). The Court has done so here. (Dkt. No. 61.) At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

### I. Motion for Final Approval

#### A. Final Certification of the Settlement Class

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiffs have satisfied his burden of demonstrating that the proposed class satisfies each element of Rule 23.

### 1) Rule 23(a)

The Preliminary Approval Order found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a). Since that time, the Court is unaware of any developments that would change its analysis, and neither Plaintiffs nor Munchery have indicated that such developments have occurred. Accordingly, the Rule 23(a) requirements are met.

### 2) Rule 23(b)(3)

The Preliminary Approval Order likewise found that the prerequisites of Rule 23(b)(3) were satisfied. The Court is unaware of any changes that would alter its analysis, and there was no indication in Plaintiffs' papers that any such developments had occurred. Accordingly, the Rule 23(b) requirements are met.

### 3) Rule 23(c)(2) Notice Requirements

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of the notice. *See Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997). Although the notice must be "reasonably certain to inform the absent members of the

plaintiff class," Rule 23 does not require actual notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (internal quotation marks and citation omitted). As noted in the Preliminary Approval Order, the notice requirements under Rule 23(c)(2)(B) are met here. The Notice describes the allegations and claims in plain language, defines a class member, includes contact information for Class Counsel and the Settlement Administrator, and summarizes the settlement amount and its distribution. The Notice further describes the options available to class members, including instructions for opting out of the settlement and filing an objection. It also informs class members that receiving a settlement award will release certain claims against certain parties. The Notice informs class members that they may appear at the final fairness hearing in person or through an attorney. Finally, it directs class members to a website with more information, including the settlement documents, motion for attorneys' fees, and pleadings. The Court is satisfied that the content of the Notice was sufficient under Rule 23(c)(2)(B). *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks and citation omitted).

***

Because the settlement class satisfies Rules 23(a) and 23(b)(3), and notice was in accordance with Rule 23(c), the Court grants final class certification.

## II. Final Approval of the Settlement Agreement

Having certified the settlement class, the Court now addresses whether the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power*

1  *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). However, when "a settlement agreement is negotiated

2  prior to formal class certification, consideration of these eight ... factors alone is [insufficient]." *In*

3  *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In such cases, courts

4  must also ensure that the settlement did not result from collusion among the parties. *Id*. at 946-47.

5  As discussed below, a review of the fairness and *Bluetooth* factors indicates that the

6  settlement is fair, adequate, and reasonable.

**A. The Fairness Factors**

**1) The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The Court first considers "the strength of the [P]laintiffs' case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). Although this action reached settlement before the Court had occasion to consider the merits of Plaintiffs' claims, the Court need not reach an ultimate conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.*

Here, the FAC alleges violations of the WARN Acts which requires, among other things, that employers must provide written notice to affected employees 60 days prior to ordering a mass layoff or relocation.  29 U.S.C. § 2102(a) (providing that "an employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of

8

such an order" to each affected employee); *see* Cal. Lab. Code § 1401 (requiring employers to give written notice to affected employees 60 days prior to "mass layoff, relocation, or termination"). Subject to certain limitations and defenses, employers that fail to provide the required notice are liable to each affected employee for back pay and benefits for each day of violation, up to a maximum of 60 days. 29 U.S.C. § 2104(a); Cal. Lab. Code § 1402(a),(b). Plaintiffs valued their claims at $1.49 million. Although Plaintiffs believe these claims are meritorious, given Munchery's bankruptcy, its estate had limited funds to pay unsecured creditors. In addition, Munchery asserted several affirmative defenses including the "'faltering company' exception" and the "'unforeseen business circumstances' exception" which posed a risk of the class receiving nothing. (*See* Dkt. No. 32 at 5-7 (citing 29 U.S.C. §§ 2102(b)(1), 2102(b)(2)(A)).)

Given the risks posed by Munchery's bankruptcy, the certainty of Class Members' recovery under the settlement weighs in favor of granting approval.

**2) Risk of Maintaining Class Action Status Throughout Trial**

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. WARN Act claims are fact intensive as are the affirmative defenses and Class Counsel suggests that discovery of each class member might have been necessary—such individualized fact issues could present a challenge to certification. (Dkt. No. 65 at 21.) In light of these concerns, the Court finds that this factor weighs in favor of approving the settlement.

**3) Settlement Amount**

The fourth fairness factor, the amount of recovery offered, also favors final approval of the settlement. When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc*., 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (collecting cases).

The net amount of $400,000 represents a 26% recovery of the Class' $1.49 million WARN claim (which is their total WARN damages capped by the Bankruptcy Code's priority ceiling of

9

$12,850 per person, pursuant to 11 U.S.C. § 507(a)(4)). In granting preliminary approval, the Court concluded that the estimated payout to class members was fair in relation to the risks of continued litigation, and there is nothing in the final approval materials that changes the Court's analysis on that score. The Court therefore concludes that the amount offered in settlement also weighs in favor of final approval.

### 4) Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371.

It is unclear whether the parties engaged in discovery prior to Munchery's bankruptcy. However, Class Counsel participated in a mediation with U.S. Bankruptcy Judge Roger Efremsky and other constituents from Munchery's Chapter 11 case. (Dkt. No. 58 at ¶ 16.) Following the mediation, that parties continued to work with Judge Efremsky and reached a settlement in February 2020. (*Id*. at ¶ 16.) "As part of the negotiations, the parties discussed the state of Defendant's bankruptcy case, including the prospect of recovery for unsecured creditors such as the Plaintiffs and other former employees. Given the limited assets in the estate, Plaintiffs agreed to resolve the WARN class claim for $400,000, subject to court approval." (*Id*. at ¶ 17.) Under these circumstances, this factor weights in favor of approval of the settlement as well.

### 5) Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class Counsel have served as counsel in more than 150 WARN class actions, representing tens of thousands of employees. (Dkt. No. 63-1 at ¶ 38.) They "have litigated WARN cases for more than 30 years (combined) in district and bankruptcy courts, have brought the breadth of their knowledge and experience to this case, including an assessment of the reality of litigating against a bankrupt debtor." (*Id*. at ¶ 29.) In light of their experience litigating WARN cases against bankrupt employers, and in consultation with the mediator, United States Bankruptcy

1  Judge Efremsky, they resolved that the Settlement is fair and reasonable.  (*Id*. at ¶ 22.)  Given

2  Class Counsel's extensive experience in this field, and their assertion that the settlement is fair,

3  adequate, and reasonable, this factor supports final approval of the Settlement Agreement. *See*

4  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir.1998); *Rodriguez v. West Pub. Corp.*, No.

5  CV05–3222 R(MCx), 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) ("The trial court is

6  entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### 6) Presence of a Government Participant

No government entity is a party to this action.

### 7) Reaction of Class Members

No objections have been received and no one has opted-out of the Settlement. (Dkt. No. 65-1 at ¶ 24.) "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks and citation omitted). Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. *Id*. (internal quotation marks and citation omitted).

***

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the class action settlement.

### B. The Bluetooth Factors

Given that this settlement was reached prior to class certification, the Court must look beyond the *Churchill* factors and examine the settlement for evidence of collusion with an even higher level of scrutiny. *See Bluetooth*, 654 F.3d at 946. The question is whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *See id*. In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id.*

11

at 947. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. at 947 (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the payout to the class (actual and expected) to class counsel's unopposed claim for fees. *See Harris v. Vector Mktg. Corp*., No. C–08–5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011). The gross Settlement Amount is $400,000 and Class Counsel's unopposed fees are $126,666.67—one-third of the settlement fund. This ratio taken alone may be a sign of collusion. *See Bluetooth*, 654 F.3d at 947. However, given that the fees requested are 40 percent of Class Counsel's lodestar the Court finds that while the high percentage is a red flag, it does not raise a concern regarding collusion.

The second warning sign—a "clear sailing" provision—is also present here. A clear sailing arrangement provides "for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]" *Bluetooth*, 654 F.3d at 947 (internal quotation marks and citation omitted). Thus, the Court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid unreasonably high fees simply because they are uncontested." *Id*. (internal quotation marks and citation omitted). However, the Settlement Agreement does not appear to be an example of Munchery agreeing to pay Class Counsel excessive fees and costs in exchange for accepting an unfair settlement for the Class; instead, it appears to be the result of Munchery's financial condition. Thus, the clear sailing provision, though a *Bluetooth* warning sign, does not signal collusion under the circumstances presented here.

12

1  The third warning sign—whether the parties have arranged for fees not awarded to the
2  class to revert to defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at
3  948—is not present here. The Settlement Agreement is non-reversionary.  The Settlement
4  Administrator shall distribute the funds to the Class with 30 days of final approval and any checks
5  not cashed within 240 days will escheat to the State of California and be administered in
6  accordance with the Unclaimed Property Law, Cal. Code Civ. Proc. § 1500 et seq.  (Dkt. No. 65-1
7  at ¶ 25.)
8  Notwithstanding the existence of two of the three *Bluetooth* factors, the Court concludes
9  that the Settlement Agreement did not result from, nor was it influenced by, collusion.  Instead,
10 the Settlement Agreement adequately satisfies the Class Members' claims given the unique
11 circumstances here. As explained below, the amount of fees sought is reasonable as well.

\* \* \*

13 In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not
14 indicate collusion. The Court is therefore satisfied that the Settlement Agreement was not the
15 result of collusion between the parties and instead is the product of arms-length negotiations
16 between experienced and professional counsel. There are no objections to address. For each of
17 these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is
18 appropriate.

**III. Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award**

20 Under the federal WARN Act the Court may in its discretion award attorneys' fees *see* 29
21 U.S.C. 2104 (a)(6); *see also* Cal. Labor Code § 1404.   Here, Plaintiffs seek attorneys' fees in the
22 amount of $126,666.67, costs of $14,591.07, and incentive payments of $2,500 for each of the
23 Class Representatives.

**A. Attorneys' Fees**

25 "While attorneys' fees and costs may be awarded in a certified class action where so
26 authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent
27 obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have
28 already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common

1  fund for the benefit of the entire class, courts have discretion to employ either the lodestar method
2  or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In*
3  *re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

4        Under the percentage-of-recovery method, attorneys are awarded fees in the amount of a
5  percentage of the common fund recovered for the class. *Id.* Courts applying this method "typically
6  calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate
7  explanation in the record of any special circumstances justifying a departure," id. (internal
8  quotation marks omitted), and "20-30% [i]s the usual range," *Vizcaino v. Microsoft Corp.*, 290
9  F.3d 1043, 1047 (9th Cir. 2002).

10        "The lodestar figure is calculated by multiplying the number of hours the prevailing party
11  reasonably expended on the litigation (as supported by adequate documentation) by a reasonable
12  hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The
13  resulting figure may be adjusted upward or downward to account for several factors, "including
14  the quality of representation, the benefit obtained for the class, the complexity and novelty of the
15  issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation
16  omitted). The party requesting fees bears the burden "of submitting billing records to establish that
17  the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196,
18  1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys'
19  own affidavits—that the requested rates are in line with those prevailing in the community for
20  similar services by lawyers of reasonably comparable skill, experience and reputation," *Camacho*
21  *v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation
22  omitted).

23        The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method
24  is used, the district court perform a cross-check using the other method to confirm the
25  reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with
26  the lodestar method will reveal if the amount requested is unreasonable in light of the hours
27  reasonably expended). *See id*. at 944-45.
28        //

14

### 1) Percentage-of-the-Recovery

The Settlement Agreement is silent as to the attorneys' fees allocation except to state that "the class proof of claim shall assert a priority claim for the $400,000 amount, regardless of its apportionment and distribution as between WARN Act back pay, taxes, costs, counsel fees, service payments, or WARN Act damages." (Dkt. No. 54-2 at 7.) In the motion for preliminary approval, Class Counsel indicated that they plan to seek one-third of the settlement amount for attorneys' fees. It appears that counsel came up with this amount after the settlement was reached and it is based on counsel having been consistently awarded this amount in other WARN Act cases. (Dkt. No. 58 at ¶ 44.) In their motion for attorneys' fees, Plaintiffs requests $126,666.67 which amounts to 30 percent of the Settlement's monetary value. While this amount is greater than the 25 percent benchmark, the Court finds that it is appropriate given the unique facts of this case.

First, Class Counsel obtained a settlement that allows for immediate cash payment from the bankrupt estate to Class Members upon final approval. Second, Class Counsel litigated the action both in this Court and in the bankruptcy court. (Dkt. No. 63-1 at ¶ 35.) Third, as Class Counsel took this matter on a contingency basis, they assumed considerable risk litigating the matter for the last two years. (*Id*. at ¶¶ 26-29.) Fourth, 25 of the Class Members signed retainer agreements with Class Counsel which allow for a one-third contingency fee arrangement. (*Id.* at ¶ 41.) Fifth, Class Counsel has consistently been awarded fees based on this percentage in other complex WARN Act cases. (*Id.* at ¶ 44.) Finally, Plaintiffs' request of $126,666.67 represents a $197,884.83 deduction to their lodestar fees of $324,551.50. (*Id.* at ¶ 32.) In other words, the fee request here is 40% of their lodestar and thus amounts to a negative multiplier of .39. (*Id.* at ¶ 33.) Accordingly, Plaintiffs' request for fees based on 30 percent of the recovery is well supported.

### 2) Lodestar Cross-Check

A cross-check on Class Counsel's lodestar also supports the fee award. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941.

15

1     "The first step in the lodestar analysis requires the court to determine a reasonable hourly
2  rate for the fee applicant's services." *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167
3  (N.D. Cal. 2012) (internal quotation marks and citation omitted). "A reasonable hourly rate is
4  ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d
5  1085,1099 (9th Cir. 2016) (internal quotation marks and citation omitted). "[T]he burden is on the
6  fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that
7  the requested rates are in line with those prevailing in the community for similar services by
8  lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin.,*
9  *Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). In
10 addition, Civil Local Rule 54-5(b)(3) requires the party seeking fees to submit "[a] brief
11 description of relevant qualifications and experience and a statement of the customary hourly
12 charges of each such person or of comparable prevailing hourly rates or other indication of value
13 of the services."

14    Plaintiffs submit a declaration from Class Counsel René Roupinian in support of their
15 request for attorneys' fees. (Dkt. No. 63-1.) The primary attorneys on the case—René Roupinian,
16 Jack Raiser, and Gail Chung—have each been practicing between 15-30 years. (*Id.* at ¶ 40.) Ms.
17 Roupinian and Mr. Raiser charge hourly rates of $950/ hour and Ms. Chung charges $650/hour.
18 (*Id.* at ¶ 32.) These billing rates are in line with prevailing rates in this district for lawyers of
19 comparable experience, skill, and reputation. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG*
20 *Inc.*, Case No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding
21 rates for senior attorneys of between $870 to $1200 per hour to be reasonable); *Rainbow Bus.*
22 *Solutions v. MBF Leasing LLC*, N. 10-cov-01993-CW, 2017 WL 6017844, at *1-2 (N.D. Cal. Dec.
23 5, 2017) (finding rates between $275 to $950 per hour to be reasonable); *Loretz v. Regal Stone,*
24 *Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (approving billing rates ranging from $900 per
25 hour (partners) to $150 per hour (law clerks) for Bay Area plaintiff's counsel in complex civil
26 litigation).

27    As to the number of hours billed, they must equal the number of hours that can reasonably
28 be billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

16

1  Thus, the court should only award fees based on "the number of hours reasonably expended on the
2  litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary[.]"
3  *Hensley*, 461 U.S. at 433–34. "There is no precise rule or formula for making these
4  determinations[,]" and the court "necessarily has discretion in making this equitable judgment."
5  *Id.* at 436–37. Class counsel attests that they spent a total of 570.3 hours. (Dkt. No. 63-1 at ¶ 32.)
6  Ms. Roupins's declaration includes a chart which indicates the number of hours billed by each
7  attorney and describes the tasks generally performed. (*Id.* at ¶¶ 32-35 (describing tasks as "(1)
8  investigating and evaluating Plaintiffs' claims and preparing the District Court Complaint, (2)
9  preparing an adversary proceeding complaint in the Bankruptcy Court and monitoring Defendant's
10 bankruptcy proceedings, (3) applying for Plaintiffs' appointment to the Defendant's Committee of
11 Unsecured Creditors in its bankruptcy and attending meetings, (4) successfully opposing
12 Defendant's Motion to Dismiss, (5) moving for class certification, (6) preparing for and
13 participating in mediation, (7) researching and analyzing legal and factual issues, (8) negotiating
14 and documenting the Settlement Agreement, and (9) seeking Court approval of the Settlement.").)
15 Class Counsel has submitted detailed billing records as well. (Dkt. No. 62-2.) The Court thus
16 finds that the hours here expended are reasonable.
17     Finally, the Court notes that the fees sought represent approximately forty percent of Class
18 Counsel's actual lodestar of $324,551.50, yielding a significant "negative multiplier." In light of
19 the foregoing, the Court finds Plaintiffs' requested attorneys' fees reasonable.
20     **B. Costs**
21     "There is no doubt that an attorney who has created a common fund for the benefit of the
22 class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v.*
23 *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted).
24 Plaintiffs request $14,591.07 in costs which represents $10,940 for Settlement Administrator costs
25 including the costs of notice, and $3,651.07 in litigation costs. (Dkt. No. 63-1 at ¶¶ 49-51.) These
26 costs are all well documented and reasonable. (Dkt. No. 63-3.) Accordingly, the Court awards
27 $14,591.07 in costs which includes the costs of settlement administration.
28 //

**C. Incentive Award**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc*., 715 F.3d 1157, 1164 (9th Cir. 2013).

> In determining whether an incentive award is reasonable, courts generally consider:
> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Further, district courts must evaluate each incentive award individually. *See Staton*, 327 F.3d at 977.

In support of the requested incentive awards, Class Counsel attests that the Class Representatives

> have performed important services for the benefit of the Class in commencing the litigation and assisting Class Counsel in preparing for mediation which resulted in resolution. Mr. Phillips and Ms. Brooks expended time and effort to assist with the preparation of the Complaint, provided Class Counsel declarations in support of the motion for class certification, and spent significant time speaking to our WARN team in preparation for mediation and subsequent settlement negotiations. Plaintiffs assisted with informal discovery and provided counsel with relevant documents in their possessions.

(Dkt. No. 63-1 at ¶ 53.) Plaintiffs' submissions include no declarations from the Class Representatives themselves attesting to their individual contributions to the case. Thus, the Court is unable to assess the relevant factors on an individual basis to determine whether incentive awards are justified for each Plaintiff. *See Staton*, 327 F.3d at 977. However, the requested amount ($2,500) is reasonable on its face. *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000" and collecting cases); *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015) (noting that service awards of $5,000 are presumptively reasonable in this judicial district).

Accordingly, the Court approves the requested $2,5000 incentive award for each Class Representative.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiffs' motion for final approval of the parties' class action settlement. In addition, the Court GRANTS Plaintiffs' motion for attorneys' fees and costs; specifically, the Court awards the following: $126,666.67 in attorneys' fees; $14,591.07 in costs; and $2,500 as incentive award for each Class Representative.

The Clerk is directed to close this case.

This Order disposes of Docket Nos. 63 and 65.

//

//

//

**IT IS SO ORDERED.**

Dated: February 1, 2021

                                                          JACQUELINE SCOTT CORLEY
                                                          United States Magistrate Judge